Filed 12/22/25  Miguel v. Miguel CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MARICRIS MIGUEL,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>ROMMEL MIGUEL,<br><br>　　Defendant and Appellant. | H052019<br>(Santa Clara County<br>　Super. Ct. No. 24DV000002) |

The trial court granted a five-year domestic violence restraining order against appellant Rommel Miguel following a hearing on the petition of respondent Maricris Miguel.  Rommel[1] contends on appeal that there was no evidence of any immediate threat or danger to Maricris to support the issuance of the restraining order.  He argues further that the five-year period for the restraining order constitutes cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.  We conclude substantial evidence supported the issuance of the restraining order and the trial court did not abuse its discretion.  Additionally, the Eighth Amendment prohibition on cruel and unusual punishment is applicable only to criminal sentences, so it does not preclude the issuance of a five-year restraining order.  Accordingly, we affirm the order.

---

[1] We refer to Rommel Miguel and Maricris Miguel by their first names for clarity's sake.  We intend no disrespect.

# I. BACKGROUND

Rommel and Maricris are married. In January 2024, the trial court granted Maricris's request for a temporary restraining order against Rommel. In her request for a domestic violence restraining order, Maricris stated under penalty of perjury that Rommel had caused her to experience trauma and high blood pressure on December 29, 2023, because "[h]e kept ringing the doorbell constantly after my sister . . . opened the door and told him to leave or we're calling the police." Rommel did not stop, so Maricris called the police and the responding officers told Rommel to leave. After Rommel left, he called Maricris five times and left voicemails. Maricris stated that two days later, Rommel followed Maricris to church and spoke to Maricris's pastor and another church member about Rommel and Maricris's marital issues. Rommel called Maricris again the next day.

Following a hearing on February 13, 2024, the trial court issued a restraining order after hearing to protect Maricris and her two dogs, with an expiration date of February 13, 2029.

Rommel timely appealed.

# II. DISCUSSION[2]

Rommel makes two arguments: (1) there was no evidence of any immediate threat or danger to Maricris to support the issuance of the restraining order; and (2) the five-year period for the restraining order constitutes cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. As we explain, neither contention has merit.

---

[2] Rommel filed a reply declaration, but no reply brief. We construe the declaration as his reply brief, but we do not consider the attached exhibits because Rommel has not requested to augment the record and it is not apparent that the exhibits were before the trial court in this matter. (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1 ["As a general rule, documents not before the trial court cannot be included as a part of the record on appeal. [Citation.]"].)

**A.      *Legal Principles and Standard of Review***

The Domestic Violence Prevention Act (DVPA) is intended "to prevent acts of domestic violence, abuse, and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence." (Fam. Code, §§ 6220, 6300.)[3]  "The DVPA's 'protective purpose is broad both in its stated intent and its breadth of persons protected.' [Citation.]  The DVPA must be broadly construed in order to accomplish the statute's purpose.  [Citation.]" (*N.T. v. H.T.* (2019) 34 Cal.App.5th 595, 602.)  Pursuant to the DVPA, an order may be issued to restrain a person if information properly provided to the court shows "reasonable proof of a past act or acts of abuse." (§ 6300.)

Under the DVPA, "abuse" is "not limited to the actual infliction of physical injury or assault." (§ 6203, subd. (b).)  Rather, " 'abuse' means any of the following:  (1) to intentionally or recklessly cause or attempt to cause bodily injury.  (2) Sexual assault. (3) To place a person in reasonable apprehension of imminent serious bodily injury to that person or to another.  (4) To engage in any behavior that has been or could be enjoined pursuant to Section 6320." (§ 6203, subd. (a).)  Behavior that can be enjoined pursuant to section 6320 includes, but is not limited to, "molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, credibly impersonating . . . , falsely personating . . . harassing, telephoning, . . . destroying personal property, contacting, . . . or disturbing the peace of the other party. . . ." (§ 6320, subd. (a).)  A restraining order issued after notice and a hearing may have a duration of up to five years. (§ 6345, subd. (a).)

"[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error

_____

[3] Subsequent undesignated statutory references are to the Family Code.

that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) "[W]here the record is silent, we must indulge all intendments and presumptions to support the challenged ruling." (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1271.) We review the grant or denial of a protective order under the DVPA for abuse of discretion. (*Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420.) "We will not disturb a trial court's exercise of discretion unless, as a matter of law, given all the relevant circumstances, we can say (1) the trial court exceeded the bounds of reason, or (2) no reasonable judge would have made the same order. [Citations.]" (*McCord v. Smith* (2020) 51 Cal.App.5th 358, 364 (*McCord*).)

"In reviewing the trial court's factual findings, we apply the substantial evidence rule. [Citation.] The inquiry is whether substantial evidence supports the court's finding, not whether a contrary finding might have been made. [Citation.] We accept as true all evidence tending to establish the correctness of the trial court's findings and resolve every conflict in favor of the judgment. [Citation.]" (*M.S. v. A.S.* (2022) 76 Cal.App.5th 1139, 1143-1144.) "[T]he reviewing court must start with the presumption that the record contains evidence sufficient to support the judgment; it is the appellant's burden to demonstrate otherwise." (*Baxter Healthcare Corp. v. Denton* (2004) 120 Cal.App.4th 333, 368.) "If two or more reasonable inferences can be reasonably deduced from the facts, we have no authority as a reviewing court to substitute our judgment for the trial court's judgment. [Citation.]" (*McCord*, *supra*, 51 Cal.App.5th at p. 364.) "Under the substantial evidence standard, the testimony of even one witness may support a finding based thereon." (*Newman v. Casey* (2024) 99 Cal.App.5th 359, 375.)

**B.** *Substantial Evidence Supports the Restraining Order*

Rommel argues there is no evidence of any immediate threat or danger to Maricris. He asserts he "tried to surprise his wife and reconcile with her," and Maricris has not met her burden of showing his conduct was "threatening, stalking and put her in immediate danger."

Even if we were to credit Rommel's contention, it would not be dispositive. Under the DVPA ". . . the requisite abuse need not be actual infliction of physical injury or assault." (*Conness v. Satram* (2004) 122 Cal.App.4th 197, 202.) "[T]hreats that do not directly refer to physical violence or cause reasonable fear of bodily harm may still constitute harassment or disturbing the peace of the recipient, which are separately enjoinable under section 6320 and therefore forms of abuse under section 6203, subdivision (a)(4). The DVPA clearly protects against more than just physical violence and threats thereof. [Citations.]" (*Vinson v. Kinsey* (2023) 93 Cal.App.5th 1166, 1176.)

In the seminal case of *In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1497 (*Nadkarni*), this court held that "the phrase 'disturbing the peace of the other party' in section 6320 may be properly understood as conduct that destroys the mental or emotional calm of the other party." In *Nadkarni*, the respondent husband accessed an email account used by the appellant wife and obtained copies of emails between her and third persons, including her attorney. (*Id*. at p. 1487.) The court concluded that "disturbing the peace" "may include, as abuse within the meaning of the DVPA, a former husband's alleged conduct in destroying the mental or emotional calm of his former wife by accessing, reading and publicly disclosing her confidential emails." (*Id*. at p. 1498.)

Other cases have also held that "[t]he DVPA is not limited . . . to circumstances involving physical harm, threats of physical harm, or conduct resulting in severe emotional distress to the person seeking the restraining order," and have found a restraining order warranted based on conduct amounting to "disturbing the peace" of the other party. (*In re Marriage of Ankola* (2020) 53 Cal.App.5th 369, 380-381 (*Marriage of Ankola*).)

In *Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140, 1142, the defendant could not accept the termination of his relationship with the plaintiff and continued contacting her despite her requests that he cease. The defendant contacted plaintiff by e-mail and text and, at one point, appeared outside her residence. (*Ibid*.) He paced around her porch

and then left after about 10 minutes before the police arrived. (*Id*. at p. 1143.) On two prior occasions during their relationship he had gotten angry and "became physical with her." (*Ibid*.) The trial court granted a restraining order, stating that " 'It just doesn't make sense that [defendant] would show up five months later out of nowhere unannounced, uninvited, stick around, not leave when asked to leave and pace around the porch. It just was at least immature, if not threatening.' " (*Ibid*.) The appellate court agreed, stating there were "substantial facts presented at the hearing to support the trial court's decision that defendant, because of his inability to accept that his romantic relationship with plaintiff was over, and despite plaintiff's numerous requests that he not contact her, was engaging in a course of conduct of contacting plaintiff by phone, e-mail, and text, which messages contained inappropriate sexual innuendos, and arriving at her residence unannounced and uninvited, and then refusing to leave and making a scene when she refused to see him for the purpose of causing her to renew their romantic relationship." (*Id*. at p. 1144.) Adopting the *Nadkarni* court's statutory interpretation of the phrase "disturbing the peace of the other party," the court therefore concluded "[t]here was substantial evidence presented at trial to support the trial court's finding that defendant disturbed the peace of plaintiff, an act of 'abuse' under the DVPA." (*Id*. at pp. 1146-1147.)

In *Marriage of Ankola*, which involved a dissolution of marriage, the trial court determined the petitioner had engaged in stalking by moving into an apartment directly across from that of the respondent. (*Marriage of Ankola*, *supra*, 53 Cal.App.5th at p. 380.) Further, the petitioner ignored requests from the respondent not to contact her and "continued to call and send her e-mails." (*Id*. at p. 381.) The trial court therefore granted the respondent's request for a five-year domestic violence restraining order. (*Id*. at p. 379.) The appellate court concluded there was substantial evidence to support the issuance of the order based on the allegations of stalking and other conduct, which constituted "harassment, unwanted contact, and disturbing the peace." (*Id*. at p. 381.)

We note that "disturbing the peace" of another party does not necessarily include "any act that upsets the petitioning party" and that "[t]he DVPA was not enacted to address all disputes between former couples." (*Curcio v. Pels* (2020) 47 Cal.App.5th 1, 13 [single, private Facebook post did not constitute abuse under the DVPA].) Nevertheless, substantial evidence supports the trial court's order here.

The evidence in the record shows that Rommel went to Maricris's sister's house to find Maricris. Although told to leave by Maricris's sister, and knowing that Maricris did not want to talk to him or see him, Rommel continued to ring the doorbell and would not leave until the police came. After leaving, Rommel called Maricris five times and left voicemails. Rommel did not stop trying to find and contact Maricris after this incident. Just two days later, Rommel went to Maricris's church where he spoke with the pastor and another church member about Maricris and their marital issues. The following day, Rommel called Maricris again.

Rommel concedes that he went to Maricris's sister's house and to the church. He asserts he was just trying to "surprise his wife and reconcile with her." We have before us no reporter's transcript or settled statement to show what specific factual or credibility determinations may have been made by the trial court with respect to Rommel's contentions. However, "[t]he doctrine of implied findings requires the appellate court to infer the trial court made all factual findings necessary to support the judgment. [Citation.]" (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58.) Further, credibility determinations are within the purview of the trial judge, and such determinations are "subject to extremely deferential review." (*Jennifer K. v. Shane K.* (2020) 47 Cal.App.5th 558, 579.) We therefore must presume the trial judge either disbelieved Rommel's explanations or found them inadequate in the face of his actual conduct.

The evidence demonstrates that Rommel sought out Maricris in person at two separate locations on two different days, in addition to making multiple phone calls and

7

leaving voicemails. This is precisely the type of conduct that can support the issuance of a protective order. (*Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275, 1290-1291 ["protective orders can be issued because of persistent unwanted phone calls or letters—which fall into the same category as 'molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, [or] harassing' the protected party"], fn. omitted.) Further, Rommel's conduct not only targeted Maricris, but also publicly involved third parties, such as the pastor and the other individual at the church. Rommel persisted in contacting Maricris after being told not to and did not cease even after Maricris resorted to contacting law enforcement. The trial court could reasonably have found Rommel's conduct would recur and that it had the effect of causing Maricris anxiety and mental and emotional disturbance. Accordingly, we conclude substantial evidence supported the trial court's order and the court therefore did not abuse its discretion.

With regard to Rommel's contention that the five-year duration of the restraining order violates the Eighth Amendment prohibition on cruel and unusual punishment, that restriction applies only to criminal sentences. (*Ochoa v. Superior Court* (1985) 39 Cal.3d 159, 174 ["In general, the protections afforded by the Eighth Amendment do not attach unless the victim has been tried and sentenced for a crime."].) A domestic violence restraining order is part of a civil proceeding; it is not a criminal conviction. (See *Christian Research Institute v. Alnor* (2007) 148 Cal.App.4th 71, 89; see also *People v. Hayden* (1994) 22 Cal.App.4th 48, 55.) Therefore, the Eighth Amendment does not apply in this circumstance. Further, as noted previously, the Family Code specifically authorizes a restraining order to be issued for a duration of up to five years. (§ 6345, subd. (a).)

### III.   DISPOSITION

The February 13, 2024, restraining order after hearing is affirmed. Costs on appeal are awarded to Maricris. (Cal. Rules of Court, rule 8.278(a)(1).)

_____
Greenwood, P. J.

I CONCUR:

_____
Grover, J.

I CONCUR IN THE JUDGMENT ONLY:

_____
Lie, J.

H052019 - Miguel v. Miguel